IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 1:12-CV-1352-ODE |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| UNITED STATES et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS

*Pro se* Plaintiff, Jacqueline Stevens, filed this action on April 18, 2012.

(Complaint, Doc. 1). Plaintiff brings this action against the following nine Federal

Defendants: United States Attorney General Eric H. Holder, Jr., Director of

Executive Office of Immigration Review (EOIR) Juan Osuna; Assistant Director

for the Office of Management Programs of the EOIR Fran Mooney; Assistant

Chief Immigration Judges of the EOIR MaryBeth Keller and Gary Smith;

Immigration Judge of the EOIR William Cassidy; Court Administrator Cynthia

Long; Regional District Supervisor for Federal Protective Services Darren Summers; and Inspector Doe (collectively, "Federal Defendants").[1]

Plaintiff's Complaint is based on judicial actions taken by the Defendants in connection with civil immigration proceedings.  Citing to two incidents, Plaintiff claims that Immigration Judge Cassidy has prevented her from having public access to immigration proceedings. Plaintiff also claims that at the instruction of Judge Cassidy, security guards unlawfully detained her and used excessive force to remove her from the premises.

The Complaint sets out two separate counts.  The first count asserts multiple claims against Defendant Judge Cassidy.  (Complaint ¶¶ 147-148).  The second count asserts multiple claims against all Defendants, including a claim that the official capacity Defendants have engaged in unconstitutional conduct that should be enjoined.  Id. at ¶¶ 149-151.

Plaintiff's Complaint should be dismissed against all Federal Defendants in its entirety because Plaintiff's Complaint fails to state a claim upon which relief can be granted. Her individual capacity claims against Judge Cassidy are barred by

---

[1] Plaintiff also names Guard DOEs 1-3, Supervisor Doe, and Paragon Systems, Inc. as defendants. These parties are not federal defendants and not represented by the United States Attorneys' Office.

the doctrine of absolute judicial immunity because they are based upon actions he took in his judicial capacity while performing his duties as a United States Immigration Judge.  Plaintiff's official capacity claims seeking injunctive relief should be dismissed because Plaintiff lacks standing and cannot demonstrate the necessary prerequisites for this type of extraordinary relief.  To the extent Plaintiff has alleged tort claims against the Federal Defendants, those are claims against the United States and are barred based upon Plaintiff's failure to exhaust mandatory administrative remedies. Additionally, Plaintiff's claims fail because the facts alleged do not state a claim for a First, Fourth, or Fifth Amendment violation. Consequently, all of the claims against the Federal Defendants should be dismissed with prejudice.

## BACKGROUND

Plaintiff, Jacqueline Stevens, is a professor at Northwestern University in Evanston, Illinois in the political science department. (Complaint ¶ 1).  According to Plaintiff, she is conducting research in the state of Georgia related to immigration law enforcement.  Id. at ¶ 2.  Based upon her research, Plaintiff has appeared on CNN, NPR, and published articles in the New York Times about the alleged immigration law enforcement conduct.  Id.  Plaintiff attends immigration

3

hearings in Atlanta, Georgia for the purpose of collecting information for her articles and media appearances.  Id.

Plaintiff alleges that on October 7, 2009,[2] she attempted to observe an immigration hearing scheduled before Judge Cassidy in Atlanta, Georgia. (Complaint ¶¶ 23-29).  Prior to the beginning of the hearing, Plaintiff alleges that Judge Cassidy's Court Administrator, Cynthia Long, told Plaintiff to leave because asylum hearings were scheduled. Id. at ¶ 29.  Plaintiff reportedly left the courtroom as instructed.

Next, Plaintiff alleges that on April 19, 2010, she planned to observe an immigration hearing before Judge Cassidy. (Complaint ¶ 46). Shortly after the proceeding began, the televideo failed and Judge Cassidy stated that he could not hear any more cases. Id. at ¶ 48. The attorneys requested he call back, which he did and was able to secure a connection. Id. at ¶ 49. Hours later, Judge Cassidy asked Plaintiff to leave. Id. at ¶ 52. Initially, Plaintiff refused to leave and questioned Judge Cassidy, demanding that he tell her why she had to leave. Id. at

---

[2]Plaintiff's October 7, 2009 allegations referenced in the Complaint cannot form the basis of her Bivens claims against Judge Cassidy because they are barred by the applicable statute of limitations, which is two years.  Kelly v. Serna, 87 F.3d 1235, 1238 (11th Cir. 2003); M.H.D. v. Westminister Sch., 172 F.3d 797, 802-03 (11th Cir. 1999).

¶¶ 48-51.  Despite Judge Cassidy's request, Plaintiff continued to question Judge Cassidy and refused to leave. Id.  Plaintiff eventually left the courtroom and sat in the EOIR waiting area.  Id. at ¶ 55-56.  According to Plaintiff, while she was waiting in the EOIR waiting room, Defendants DOEs 1-3 approached her and said it was "time to leave."  Id. at ¶ 58.  Instead of leaving the building as instructed, Plaintiff started to question the officers.  Id. at ¶ 58.  According to Plaintiff, after she refused to leave the building, DOE 1 removed his handcuffs from his belt.  Id. Plaintiff reports that after seeing DOE 1 remove his handcuffs, she then decided to get up and leave the building.  Id. According to Plaintiff, as she was leaving the building DOE 1 allegedly "pushed" her shoulder and side. Id. at ¶ 60.  Plaintiff reports that as she was leaving she heard DOE 1 tell another guard that "Judge Cassidy wants her out of here!"  Id.

Based upon these allegations, Plaintiff filed this complaint alleging violations of the First, Fourth, and Fifth Amendments to the United States Constitution, as well as assault, battery, and false imprisonment. (Id. ¶¶ 147-151).

5

## ARGUMENT

This motion is brought pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  It is well settled that "[a] federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination."  Goodman v. Sipos, 259 F.3d 1327 (11th Cir. 2001). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Garcia v. Copenhaver, Bell & Associates, 104 F.3d 1256, 1260-61 (11th Cir. 1997).  Additionally, in appraising the sufficiency of a complaint in regard to a motion to dismiss pursuant to Rule 12(b), it is accepted that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Mitchell v. E.Z. Way Towers, Inc. 269 F.2d 126, 130 (5th Cir. 1959)(quoting Conley v. Gibson, 355 U.S. 41, 45-45 (1957). Plaintiff's Complaint should be dismissed because this Court lacks subject matter jurisdiction and it fails to state a claim upon which relief can be granted.

6

**A.  Plaintiff Lacks Standing To Assert Her Injunctive Claims Against all Federal Defendants in Their Official Capacities Because no Threat of Future Injury Exists.**

In the Second Count of the Complaint, captioned "Preliminary and Permanent Injunction (against all Defendants)," Plaintiff pleads that she is entitled to preliminary and permanent injunctive relief requiring Judge Cassidy to giver her unfettered access to immigration hearings.  (Complaint ¶¶ 149-151).  As a claimant seeking injunctive relief before this Court, Plaintiff must show she has standing by demonstrating that there exists a real, immediate threat of future injury to her.  Plaintiff cannot show such a threat and therefore lacks standing.

To have standing to seek injunctive relief, a plaintiff must demonstrate that he or she suffered injury in fact, that the injury is fairly traceable to the defendant's actions, and that the injury will likely be redressed by a favorable decision.  See CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)).

A plaintiff seeking injunctive relief must establish not only a past injury, but also a real, immediate threat of future injury.  City of Los Angeles v. Lyons, 461

U.S. 95, 102-05 (1983) (requiring that, because injunctions regulate future conduct, a party seeking injunctive relief must allege a threat that is real and immediate, not merely conjectural or hypothetical). Speculation as to future injury is insufficient, even if the practice the injunction movant challenges is considered continuing. Id. at 109 ("The equitable doctrine that cessation of the challenged conduct does not bar an injunction is of little help in this respect, for Lyons' lack of standing does not rest on the termination of the police practice but on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued.")

Plaintiff fails to establish a real, immediate threat of future injury because she relies on allegations involving experiences with the EOIR that have passed. As in other instances in which courts have denied relief to plaintiffs seeking declaratory and injunctive relief, Plaintiff seeks prospective relief yet can point only to instances of alleged harm that have ceased to occur. See, e.g., Lyons, 461 U.S. at 105. The Court should dismiss her injunctive claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

In Lyons, the plaintiff sought to enjoin the use of 'chokeholds' by police officers in the future by citing to injuries the plaintiff allegedly suffered when

placed in a chokehold, and he alleged that the use of chokeholds was "routine" and would occur again.  Id.  The Court first found that plaintiff's allegations failed to establish a real and immediate threat that he would again be stopped for a traffic violation or any other offense by an officer "who would illegally choke him into unconsciousness without any provocation or resistance on his part." Id.  Next, it found that plaintiff's allegation that "the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between *these* parties."  Id.  (emphasis added).  The Court defined precisely what allegation would suffice to meet plaintiff's standing threshold by stating that the plaintiff would not only have to allege he would have another encounter with the Los Angeles police, but that he also would have to make one of the two following "incredible" assertions:

> either, (1) that *all* police officers in Los Angeles *always* choke
> any citizen with whom they happen to have an encounter, whether
> for the purpose of arrest, issuing a citation or for questioning or,
> (2) that the City ordered or authorized police officers to act in
> such manner.

Id. (emphasis in original).  The Lyons Court accordingly found that the plaintiff had not established standing because – based on the particular facts and the relief

requested – the plaintiff could never have met his burden as the Court identified it above.  Id.

Following the principles outlined in Lyons, to meet her burden for standing, Plaintiff here would have to show a real and immediate threat that she will have another encounter with EOIR immigration court personnel and either (1) all EOIR immigration court personnel always conduct proceedings in a manner that is alleged in the Complaint and that thus violates the constitutional rights of every member of the public they encounter; or (2) the Government ordered or authorized EOIR immigration court personnel to always violate the constitutional rights of every member of the public they encounter as alleged in the Complaint.  See id. The possibility that such a proposition could occur again is as incredible in the instant matter as it was for the Lyons Court.  Because Plaintiff cannot meet her burden by showing a real and immediate threat of future injury as articulated in Lyons, she fails to demonstrate standing.  The Court thus should dismiss her claims for injunctive relief for lack of subject matter jurisdiction.

**B.  Plaintiff's Injunctive Relief Fails To State A Claim Because She is Not Entitled to Such A Drastic Remedy**

Even if this Court were to find Plaintiff demonstrates standing, it should nonetheless dismiss Count Two because it does not state a claim for injunctive relief.  Plaintiff cannot show she is entitled to the drastic remedy of an injunction.

To obtain preliminary injunctive relief, the moving party must show (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. See Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam).  The movant seeking an injunction must clearly establish the burden of persuasion on each element.  Id. (citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998)) (citations and quotation marks omitted).

A preliminary injunction is an order "issued to preserve the *status quo* and prevent allegedly irreparable injury until the court ha[s] the opportunity to decide upon issuing a permanent injunction."  Klay v. United Healthgroup, Inc., 376 F.3d

11

1092, 1101 n.13 (11th Cir. 2004).  A preliminary injunction is an "extraordinary and drastic remedy." <u>Siegel</u>, 234 F.3d at 1176.

Specific to the injunction Plaintiff seeks, it does not require Defendants to cease an action but instead requires a specific, affirmative action – that Defendants provide "open access to the immigration hearings in Judge Cassidy's court in compliance with the law." <u>See</u> Complaint. at Count Two Relief Request at 44. Plaintiff therefore seeks a mandatory injunction.  <u>United States v. Gilbert</u>, 244 F.3d 888, 908 (11th Cir. 2001) (reversed on other grounds); <u>Preferred Sites, LLC v. Troup Cnty.</u>, 296 F.3d 1210, 1221 (11th Cir. 2002) (a writ of mandamus frequently grants the same relief to a party as a mandatory injunction, ordering a party to take action).

Plaintiff claims <u>Bivens</u> damages as the result of events that transpired when she was asked to leave the immigration court on April 19, 2010.[3]  Also, pointing to events on October 7, 2009, and April 19, 2010, Plaintiff claims a violation of her constitutional rights under the First, Fourth, and Fifth Amendments, <u>see</u> Complaint at ¶¶ 16, 64, 79, 100, based on a conspiracy to prevent Plaintiff, ¶ 146, ostensibly

---

[3]  Plaintiff makes <u>Bivens</u> allegations against only William Anthony Cassidy, and the Government's response to Plaintiff's injunctive claims therefore will address <u>Bivens</u> only as it relates to Defendant Cassidy.

as a member of the press media, ¶¶ 17, 24, 140, 144, from accessing the

immigration court to observe proceedings.  Id. at ¶¶ 148, 150, 151.  Plaintiff's

allegations, even if taken as true, do not meet the requirements for injunctive

relief.

1. <u>**Plaintiff Cannot Show A Substantial Likelihood Of Success On The Merits**</u>

Plaintiff is unlikely to succeed on the merits of her injunctive claims.  She

therefore fails to meet the first required showing for injunctive relief, and this

Court should dismiss her injunctive claims pursuant to Fed. R. Civ. P. 12(b)(6).

**(i)  Plaintiff's Constitutional <u>Bivens</u> Claims Against Defendant Cassidy in his Individual Capacity.**

In Count One of Plaintiff's Complaint, she seeks monetary damages against

Defendant Cassidy in his individual capacity under the First, Fourth, and Fifth

Amendment of the United States Constitution.  This Count is unlikely to succeed

on the merits because, as outlined below, Defendant Cassidy is an administrative

judge and is therefore entitled to absolute immunity from claims arising from quasi

judicial administrative proceedings.  While Plaintiff claims she was injured when

Defendant Cassidy closed an immigration hearing to her and the public generally,

given that this activity is closely intertwined with the judicial process, absolute

immunity will apply to claims for <u>Bivens</u> damages against Defendant Cassidy related to the closed hearing.

### (ii)  Plaintiff's First Amendment Claims Fail to State a Claim[4]

Plaintiff contends that her First Amendment rights were violated when she was barred from access to an immigration hearing in which Defendant Cassidy presided. The claim is based on a public right of access.

### 1.  The Relevant Regulations Permits Judge's Discretion.

The relevant regulations in this case are 8 C.F.R. § 1003.27 and 8 C.F.R. § 1208.6.  Both regulations permit immigration judges to close hearings to the public.  8 C.F.R. § 1003.27 states that "all hearings, other than exclusion hearings, shall be open to the public." However, the regulations provides specific exceptions that permit Defendant Cassidy to close a hearing when he determines it to be appropriate. In subsection (b), it states that "for the purpose of protecting witnesses, parties, or the public interest, the Immigration Judge may limit

---

[4]To the extent Plaintiff has alleged a <u>Bivens</u> action based upon the First Amendment against Judge Cassidy in his individual capacity, that claim also fails because the Supreme Court has "declined to extend <u>Bivens</u> to a claim sounding in the First Amendment."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1948 (2009) (citing <u>Bush v. Lucas</u>, 462 U.S. 367 (1983).  Consequently, Plaintiff's <u>Bivens</u> claim against Judge Cassidy based upon a violation of the First Amendment fails to state a claim for this reason.

attendance or hold a closed hearing." This section provides broad language that allows a judge to assess the hearing generally and make an independent determination of whether or not the hearings should be performed in an open or closed fashion.[5]

Further, in subsection (c) the regulation provides that any proceeding involving an abused alien spouse is automatically closed unless the spouse agrees that the hearing should be open to the public. Hearings involving abused alien children are always closed. Plaintiff alleges in Paragraph 20 of the Complaint that the hearings that she was forced to leave did not involve cases of abuse. However, besides Plaintiff's bald assertion in her Complaint, Plaintiff points to no credible evidence to support her allegations. Plaintiff's speculative allegations should be rejected by this Court and need not be considered in the four corners analysis and taken as true. See Iqbal, 129 S.Ct. at 1948. There have been no factual findings that the Defendant Cassidy's docket on April 19, 2010 did not include abuse cases.

[5] The language of 8 C.F.R. § 1003.27 is reiterated in the Immigration Court Practice Manual under heading "4.9 – Public Access." While the manual does not hold the force of law, it is relevant in providing a better understanding of 8 C.F.R. § 1003.27. Section (ii) states, "***Immigration Judges authorized to close hearings.***. The Immigration Judge may limit attendance or close a hearing to protect parties, witnesses, or the public interest, even if the hearing would normally be open to the public. See 8 C.F.R. § 1003.27(b)."

15

If his docket included such cases, it was well within Judge Cassidy's discretion to close the hearing.

Contrasting 8 C.F.R. § 1003.27 with 28 C.F.R. § 50.9 is informative in determining the nature of closed hearings in the context of immigration courts. 28 C.F.R. § 50.9 states that "because of the vital public interest in open judicial proceedings, the Government has a general overriding affirmative duty to oppose their closure." This strong language as applied to open judicial proceedings contrasts with the weaker language as applied to immigration hearings. If it was the intent of the legislation's drafters to prevent immigration hearings from being closed, and for the general policy to be opposition to closure, the language would have been as strong as that found in 28 C.F.R. § 50.9.

## 2. There is no First Amendment Right of Access to Immigration Hearings.

In <u>N. Jersey Media Group, Inc.</u>, 308 F.3d 198, 199 (3d Cir. 2002), the court found that the newspaper companies did not have a First Amendment right of access to deportation proceedings. As described by the court, Congress has never explicitly granted public access to such proceedings and such hearings are often held in places generally inaccessible to the public. <u>Id</u>. at 201.

The test used set forth in N. Jersey Media Group, Inc. is the same test provided for by the Supreme Court in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980), described as the "experience and logic" test. N. Jersey Media Group, Inc. 308 F.3d at 204. This test consists of two prongs.  The "experience" prong asks if there is a historical right of access to government proceedings generally. The second  "logic" prong asks if the benefits achieved by having an open hearing outweigh the benefits of a closed hearing. Id. at 200. The court explained that deportation hearings have frequently been closed to the general public, and that until the 1900s the government often held such hearings in prisons, hospitals, or private homes, all places where there is no general right of public access. Id. at 212. To date, the government continues to hold such hearings in federal and state prisons. Id. The N. Jersey Media Group, Inc. court noted that Richmond Newspapers required an "unbroken, uncontradicted history," and such a history does not exist in the context of deportation hearings. Id. The court also stated that relaxing the "experience" prong would lead to perverse consequences, such as a presumption that there is a right of access whenever an executive agency does not consistently bar all public access. Id. at 216.

The court found that the "logic" prong was also not satisfied. Id. at 216. The court determined that national security outweighed the benefits of openness and that the judge was then permitted to close the hearings. Id. at 217.

Contradicting the ruling of N. Jersey Media Group, Inc. is the ruling in Detroit Free Press v. Ashcroft, 303 F.3d 681 (6th Cir. 2002). The court in Detroit Free Press dealt with the same issues and directives as did the court in  N. Jersey Media Group, Inc. court did. In Detroit Free Press, the court found that the press was entitled to an injunction prohibiting the federal government from conducting alien's removal proceedings behind closed doors. Id. at 683. The "experience and logic" test was used to show that deportation proceedings have traditionally been open to the public and that public access plays a significantly positive role. Id. at 695.

The ruling in Detroit Free Press was based on a blanket closure of deportation proceedings, which is not true of the present case. In contrast, the present case involves only one specific hearing being closed. The Detroit Free Press court noted that the Creppy Directive, which closed many hearings, was not narrowly tailored. Id. at 707. The court specifically stated that "the Government offers no persuasive argument as to why the . . . concerns cannot be addressed on a

case-by-case basis. Id.  This case involves a case-by-case determination of whether a hearing will be open or closed. There has been no "directive" issued by Defendant Cassidy, as well as no evidence that a significant number of his hearings are closed, and thus the closures are permissible. Further, Plaintiff makes no mention of the total number of hearings that she has been able to attend while Defendant Cassidy has presided. Thus, there can be no specific allegation that it is Defendant Cassidy's normal procedure to close hearings when it is equally likely that the vast majority of his hearings are open to the public.

In Pechter v. Lyons, 441 F. Supp. 115 (S.D.N.Y. 1977), the court likewise provided an injunction against enforcement of a ruling of an immigration judge excluding the general public from a deportation hearing. Id. at 120. However, the facts of Pechter are distinguishable from the facts of the present case. The court's primary determination was that the reason for the hearing's closure was a concern for the respondent's safety, which could be easily remedied. Id. The case is thus limited to the particular facts and does not extend to the present case. If a condition can be easily remedied, such as in Pechter, and will lead to a hearing's opening, the remedy should be provided. However, in the present case, Defendant Cassidy did not describe his reasons for closure to Plaintiff, and so the concerns

19

cannot be understood to be ones of safety. <u>Pechter</u> is also a decision rendered outside the Eleventh Circuit, so its holding is in no way binding.

The above cited regulations applicable to immigration court proceedings and discussed above – while providing generally open access to the public – permit Defendant Cassidy to close immigration proceedings as he did on April 19, 2010. <u>See</u> 8 C.F.R. §§ 1003.27(identifying several instances when an Immigration Judge may put reasonable limitations on the number of people in attendance at hearings and close hearings to the public), 8 C.F.R. § 1208.6 (requiring Immigration Judges to close hearings related to asylum applications except under certain limited circumstances).

Further, and to the extent that the Court were to look beyond these regulations, case law holds that there is no clearly established First Amendment right of access to immigration hearings. <u>See</u> <u>New Jersey Media Group, Inc</u>., 308 F.3d 198 at 199; <u>Richmond Newspapers, Inc</u>., 448 U.S. 555; <u>Detroit Free Press</u>, 303 F.3d 681; <u>Pechter</u>, 441 F. Supp. 115 (S.D.N.Y. 1977)). Given the case-by-case determination that should be applied in immunity analysis, as well the particular circumstances here and the reasonableness of Defendants' actions in

20

response, Defendant Cassidy's actions were permissible, and Plaintiff is unlikely to succeed on the merits of her First Amendment-based <u>Bivens</u> claims against him.

**(iii). Plaintiff's Complaint Fails to State a Fourth Amendment Claim**

The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government.  U.S. Const. amend. IV.  A seizure within the meaning of the Fourth Amendment can occur when "a person's freedom of movement is restrained by means of physical force or by submission to a show of authority." <u>See</u> <u>United States v. Allen</u>, 447 F. App'x 118, 120 (11th Cir. 2011).

Plaintiff does not specifically identify which alleged facts support her claim regarding the Fourth Amendment.  Instead, Plaintiff makes a conclusory statement that she "was unlawfully and maliciously detained and deprived of her personal liberty by the Defendant Paragon System Inc.'s security guards, which constitutes false imprisonment, a seizure in violation of her Fourth Amendment constitutional rights." (Complaint ¶ 134).

Not all encounters an individual has with law enforcement constitutes a seizure within the Fourth Amendment.  <u>Terry v. Ohio</u>, 329 U.S. , 19 N. 16 (1968). Interactions with law enforcement that involve only minimal police contact are more appropriately referred to as a consensual encounter.  <u>Florida v. Bostick</u>, 501

21

U.S. 429 (1991)  A person, however, has only been seized within the meaning of the Fourth Amendment if a reasonable person would have believed that he was not free to leave.  United States v. Mendenhall, 466 U.S. 544 (1980).  The determination of whether a seizure has occurred based upon a show of authority is analyzed under an objective test, and not the individual's subjective perception.  California v. Hodari D., 499 U.S. 621 (1991).

Plaintiff's *pro se* Complaint alleges that at the request of Immigration Judge Cassidy, the security guards asked her to leave the building. (Complaint ¶¶ 6, 98, 106, 132).  Plaintiff further alleges that when she refused to leave, the security guards removed their handcuffs and pushed Plaintiff on her shoulder and side with his hands.  Id. ¶ 60).  Plaintiff does not allege that she was prevented from walking away.  She does not allege that the officers detained her in a part of the building.  Moreover, Plaintiff does not allege that she suffered any injury as a result of this interaction with the officers.  Moreover, reading Plaintiff's *pro se* Complaint liberally, to the extent she is claiming that Defendant Paragon System's security guards somehow restricted her freedom of movement, the facts alleged simply do not support any deprivation under the Fourth Amendment to the U.S. Constitution as to the Federal Defendants.  See Am. Fed.'n of Labor and Congress of Indus.

22

<u>Orgs. v. City of Miami, Fla.</u>, 637 F.3d 1178, 1191 (11ᵗʰ Cir. 2011)("A seizure occurs whenever the police restrain the freedom of a person to walk away).[6]

### (iv). Plaintiff's Complaint Fails to State a Fifth Amendment Claim

Similarly, Plaintiff's Complaint also fails to state a Fifth Amendment claim because, under the United States Constitution, Plaintiff is not entitled to Due Process as a non-party to the hearings to which she seeks access.  The *parties* involved in the hearing Plaintiff was unable to attend on April 19, 2010, have a due process interest in the proceedings in which they are involved.  *Plaintiff*, on the other hand, has no due process interest in such proceedings.  As previously stated, Judge Cassidy used his discretion to appropriately close the April 19, 2010, hearing, and Plaintiff has had no Fifth Amendment right infringed.

---

[6]In her Complaint, Plaintiff also alleges that the false imprisonment, assault and battery amounted to a seizure in violation of her Fourth Amendment rights. (Complaint ¶ 136).  These claims would be more appropriately pursued under the Federal Tort Claims Act.  Moreover, Immigration Judge Cassidy is immune from suit for these common law tort claims.  The United States, however, has a limited waiver of sovereign immunity under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("the FTCA").  Plaintiff, however, has not asserted an allegation under the FTCA. Assuming Plaintiff's *pro se* Complaint is liberally construed to assert a claim under the FTCA, the United States should be substituted as the Defendant in all common-law tort claims and these claims should be dismissed based upon Plaintiff's failure to timely exhaust her mandatory administrative remedies.  <u>See</u> 28 U.S.C. § 2679(d)(1); 28 U.S.C. § 2675(a); <u>Orlando Helicopter v. U.S.</u>, 75 F.3d 622 (11ᵗʰ Cir. 1996).

The Fifth Amendment states that no person shall be deprived of "life, liberty, or property without due process of law." U.S. CONST. amend. V. Plaintiff has no such property interest in immigration cases that would provide grounds for a Due Process violation. Speaking broadly, the court in Fitzgerald v. Hampton, 467 F.2d 755 (D.C. Cir. 1972) described that Due Process is involved when a governmental action seriously injures an individual and the reasonableness of the action depends on fact findings. Id. at 763. The case involved a former federal employee seeking to enjoin the United States Civil Service Commission from holding a closed hearing related to the termination of his employment. The absence of any discussion of Due Process rights in the case of non-parties is important, because its absence relays that Due Process in such proceedings is due to the parties only.

Further, in Detroit Free Press, the court discussed Fifth Amendment rights as applied to closed immigration hearings and right of public access. Like Fitzgerald, the court described such rights only in the context of the parties involved in the suit and never in regard to non-party observers. Given the applicability of Detroit Free Press to this case and its discussion of the issues involved in the present case, this absence provides direction in terms of the

24

appropriate form of a Fifth Amendment complaint and who may or may not bring

such a claim.

2   **Plaintiff will not suffer irreparable injury if the injunction
    does not issue**

Plaintiff will suffer no injury – let alone irreparable injury – in the absence

of the injunction.  In further response on this issue, and given constraints of length

in this pleading, Defendants respectfully refer the Court to their arguments on

injury in Section A above.  In short, Defendants contend that, as it relates to

Plaintiff's allegations of past injury, any potential has passed for future injury.

Defendants further contend that, to demonstrate potential injury, Plaintiff would

have to show either that immigration court personnel routinely conduct

proceedings in an unconstitutional manner as to their interactions with the public

and the access they provide; or that the Government ordered immigration court

personnel to always violate the constitutional rights of the entire public according

the violations alleged in Plaintiff's Complaint.  See supra at 9-10 (citing Lyons,

461 U.S. at 105).  There simply is no credible threat of such future injury.

Additionally, the threat of *irreparable* injury is even less credible.  As

discussed in Section A above, Defendants' actions are authorized by regulation,

there is no clearly established First Amendment right of access to immigration

25

hearings, and whatever Due Process right Plaintiff has does not derive from immigration hearings given that Plaintiff is not a party to these hearings and is instead pursuing the process to which she is due through the instant law suit.

Because Plaintiff cannot meet her burden by showing a real and immediate threat of future injury as articulated in <u>Lyons</u> – – let alone irreparable injury – – she fails to demonstrate standing.  The Court thus should dismiss her claims to injunctive relief for lack of subject matter jurisdiction.

## 3.  Plaintiff as the Movant will Suffer no Injury, While the Injunction Would Significantly Harm Defendants

While Plaintiff is under no threat of injury, Defendants, on the other hand, would suffer harm should the injunction issue requiring "open access to the immigration hearings in Judge Cassidy's court."  <u>See</u> Compl. at Count Two Relief Request at 44.

EOIR, in conducting its immigration proceedings, has a regulatory duty to ensure the confidentiality of hearings involving claims to asylum and credible/reasonable fear of torture or where the subject of the hearing requests a closed hearing.  <u>See</u> 8 C.F.R. §§ 1208.6, 1003.27.  Defendant Cassidy's courtroom is not excepted from this requirement, and, to this end, he is entitled to place

"reasonable limitations" on public access to hearings he conducts.  Id.  Moreover, and even acknowledging the regulation's default position that immigration hearings "shall be open to the public," see 8 C.F.R. § 1003.27, the notion of *completely* "open access" to immigration hearings is not an established legal requirement.  See supra at pp. 16-20 (discussing New Jersey Media Group, Inc., 308 F.3d at 199; Richmond Newspapers, Inc., 448 U.S. 555; Detroit Free Press, 303 F.3d 681; and Pechter, 441 F. Supp. 115 (S.D.N.Y. 1977)).  Accordingly, issuance of the injunction Plaintiff seeks would harm Defendants by both requiring Defendant Cassidy, and therefore EOIR, to contravene regulations and extending the current level of public access to immigration proceedings beyond that required by federal courts.  Id.

## 4.  **If issued, the injunction would be adverse to the public interest**

Issuance of an injunction requiring "open access to the immigration hearings in Judge Cassidy's court" would be adverse to the public interest for the reasons outlined in Section 3 above.  Simply put, such an injunction would eviscerate the law as it currently stands for protecting the confidentiality of persons with certain claims who come before Defendant Cassidy.  Given the potentially sensitive nature of such claims, particularly for children and persons

27

alleging they face personal danger in their home country or at the hands of abusive

spouses, see 8 C.F.R. §§ 1208.6, 1003.27, there is a distinct public interest in

ensuring that certain hearings in Judge Cassidy's court remain closed to the public,

and issuance of the injunction would be adverse to that public interest by

removing the possibility of closed hearings even when warranted.

**C.     The Court Should Dismiss the Injunctive Claims for Failure to State a
         Claim Because the Court Cannot Grant the Type of Injunctive Relief
         Requested**

Plaintiff requests the Court to issue an injunction "granting Plaintiff, the

public, and the press open access to the immigration hearings in Judge Cassidy's

court in compliance with the law." See Complaint at Count Two Relief Request at

44.  The Court cannot grant this requested relief because such broad, generalized

injunctive relief is not available to Plaintiff.

An injunction must be specific in terms and describe in reasonable detail the

act or acts sought to be restrained.  Fed. R. Civ. P. 65(d).  Specificity of terms in

the injunction reflects the "seriousness of the consequences which may flow from

a violation of an injunctive order."  Payne v. Travenol Laboratories, Inc., 565 F.2d

895, 898 (5th Cir. 1978) (citing Pasadena City Board of Education v. Spangler,

427 U.S. 424, 438-39 (1976)).  An injunction must contain an operative command

28

capable of enforcement.  See International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 73-74 (1967).  Controlling precedent has set aside injunctions that are too generalized in their failure to specify the conduct they prohibit, terming them "'obey the law' injunctions."  See id.; Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999) (citing Payne, 565 F.2d at 898)).

In Burton v. City of Belle Glade, the Eleventh Circuit found that an injunction failed to meet Rule 65(d) specificity standards, could not be enforced, and thus was not an available remedy when it prohibited defendant city from "discriminating" in future annexation decisions.  See Burton, 178 F.3d at 1201 (citing Payne, 565 F.2d at 898).  Similarly, in Payne, the Fifth Circuit Court of Appeals found an injunction went beyond the allowable limits of Rule 65(d) when it prohibited defendant company from "discriminating," yet the injunction failed to specify the sort of actions it was intended to reach any more than the existing Title VII employment discrimination statute itself.  See Payne, 565 F.2d at 898.

These decisions make clear the courts' inability to issue injunctions that restate or reaffirm the law in the form of "obey the law" mandates.  With important qualifications discussed above, see supra at pp. 16-20 (discussing New Jersey

29

<u>Media Group, Inc.</u>, 308 F.3d at 199; <u>Richmond Newspapers, Inc.</u>, 448 U.S. 555;

<u>Detroit Free Press</u>, 303 F.3d 681; and <u>Pechter,</u> 441 F. Supp. 115, it is well-

established that immigration hearings are generally open to the public.  Plaintiff

requests that the Court issue an injunction requiring Defendants to comply with

the law by granting open access already provided by law, <u>see</u> <u>id.</u>, and by

regulation, <u>see</u> 8 C.F.R. §§ 1003.27, 1208.6.  Because the result would be an

"obey the law" mandate, this Court cannot grant Plaintiff's requested relief by

issuing such an injunction, and on this basis it therefore should dismiss the

injunctive claims of the Complaint for failure to state a claim.

**D.    Defendant Cassidy is Entitled to Absolute Immunity.**

      Defendant Judge Cassidy is entitled to absolute immunity[7] with respect to

the alleged actions.  To the extent Plaintiff alleges that the Defendant

inappropriately closed an immigration hearing, this action, if true, is so closely

---

[7] Even if not absolute, Defendant Cassidy is entitled to qualified immunity. The doctrine of qualified immunity protects a governmental official performing discretionary functions from civil liability so long as their conduct violates no clearly established constitutional rights.  <u>Caraballo-Sandoval v. Honsted</u>, 35 F.3d 521, 524 (11th Cir. 1994), <u>reh'g and suggestion for reh'g en banc denied</u>, 48 F.3d 538 (11th Cir. 1995). As set forth above at pp 16-20, there is no clearly established Constitutional right of public access to immigration hearings.

intertwined with the judicial process that Judge Cassidy is entitled to absolute immunity.

It is settled law that administrative judges are shielded by absolute immunity from claims arising from quasi-judicial administrative proceedings. See Butz v. Economou, 438 U.S. 478, 514-15 (1978) (holding agency administrative hearing examiners were entitled to absolute immunity from liability arising from the proceedings). To determine whether officials are entitled to absolute immunity, the court has employed a "functional approach," Burns v. Reed, 500 U.S. 478, 486 (1991), which "looks to the nature of the function performed, not the identity of the actor who performed it." Buckley v. Fitzsimmons, 113 S. Ct. 2606, 2613 (1993)(quoting Forrester v. White, 484 U.S. 219, 229 (1984)). In analyzing the nature of the functions performed, this Court should find that Judge Cassidy is entitled to absolute immunity.

Here, the Plaintiff alleges that the Defendant unlawfully and in violation of her First Amendment rights closed an immigration hearing to the public. Complaint ¶ 148. Plaintiff's Complaint is based upon two incidents. One occurred on October 7, 2009 and the other on April 19, 2010. In both incidents, the Plaintiff admits that Judge Cassidy has authority in certain instances to close these

31

hearings. Id. at ¶ 52. Plaintiff, however, does not believe that the reasons provided by Judge Cassidy or Defendant Cynthia Long for closure of the hearings on those two days were within that authority.

Assuming for the sake of argument that the Defendant did unlawfully close the hearing, Judge Cassidy's actions in those two instances were so closely intertwined with the judicial process that Defendant Judge Cassidy is entitled to absolute immunity. Plaintiff's allegations are based upon decisions made by Judge Cassidy in an immigration civil case. At no point did Judge Cassidy act outside the scope of his employment as a U.S. immigration judge and Plaintiff does not allege any facts to support this claim. Interactions between Judge Cassidy and Plaintiff were at all times within the confines of Judge Cassidy's courtroom and his job duties as an Immigration Judge.  As alleged in Plaintiff's Complaint, his interactions were so limited that the only interaction the individuals had on April 19, 2010 was when Judge Cassidy asked Plaintiff to leave his courtroom. With that one exception, Judge Cassidy was either at his dais or presumably in his chambers. The other interactions that Plaintiff notes occurred in the courtroom. These interactions between Judge Cassidy and the parties specifically involved in the hearings which Plaintiff was observing. The facts alleged in Plaintiff's

32

Complaint regarding the April 19, 2010 incident show only one time where Judge Cassidy clearly and unambiguously sought to close the hearing unexpectedly, and this was when the televideo failed. Complaint ¶ 48. Judge Cassidy's decisions and actions were judicial actions taken while he was performing as a U.S. Immigration Judge. These judicial acts that form the basis of Plaintiff's Complaint fall squarely within the protection provided to immigration judges by the doctrine of absolute immunity. Consequently, the doctrine of absolute immunity is a complete ban to Count I, which involves all claims alleged against Judge Cassidy.

## CONCLUSION

For the foregoing reasons, Defendant Cassidy, along with the other named Federal Defendants, respectfully submits that this Court should grant the Defendant's motion to dismiss.

Respectfully submitted this 26th day of July, 2012

> SALLY QUILLIAN YATES
> UNITED STATES ATTORNEY
>
> /s/ Aileen Bell Hughes
> AILEEN BELL HUGHES
> ASSISTANT U.S. ATTORNEY

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, Georgia 30335
404/581-6133
Georgia Bar No. 375505


STUART F. DELERY

Acting Assistant Attorney General

DAVID J. KLINE

Director, District Court Section

Office of Immigration Litigation

VICTOR M. LAWRENCE

Assistant Director

CHRISTOPHER W. HOLLIS, ILBN 6283101

Trial Attorney

Office of Immigration Litigation

District Court Section

U.S. Department of Justice

PO Box 868 Ben Franklin Station

Washington, D.C. 20044

Tel.: (202) 305-0899; Fax: 616-8962

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the document to which this certificate is attached has been prepared with one of the font and point selections approved by the Court in LR 5.1B for documents prepared by computer.


/s/ Aileen Bell Hughes
AILEEN BELL HUGHES
ASSISTANT UNITED STATES
ATTORNEY

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day served the enclosed **MEMORANDUM OF LAW IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS,** by depositing a copy thereof,  postage prepaid, in the United States Mail addressed as follows:

> Jacqueline Stevens
> Northwestern University
> Political Science Department
> 601 University Place
> Evanston, IL 60208

This 26rd day of July, 2012.

> /s/ Aileen Bell Hughes
> AILEEN BELL HUGHES
> ASSISTANT U.S. ATTORNEY