FILED IN CHAMBERS
U.S.D.C. - Atlanta

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA JAN 1 6 2013
ATLANTA DIVISION

By: James N. Hatten, Clerk
AM Cauer
Deputy Clerk

JACQUELINE STEVENS,

    Plaintiff

v.

ERIC HOLDER, Attorney General
of the United States; JUAN
OSUNA, Director, Executive
Office of Immigration Review;
FRAN MOONEY, Asst. Director,
Office of Management Programs,
Executive Office of Immigration
Review, in her individual and
official capacity; MARYBETH
KELLER, Asst. Chief Immigration
Judge, Executive Office of
Immigration Review, in her
individual and official
capacity; GARY SMITH, Asst.
Chief Immigration Judge,
Executive Office of Immigration
Review; WILLIAM ANTHONY
CASSIDY, Immigration Judge,
Executive Office of Immigration
Review, in his individual and
official capacity; CYNTHIA
LONG, Court Administrator, in
her individual and official
capacity; DARREN EUGENE
SUMMERS, Regional District
Supervisor, Federal Protective
Services, in his individual and
official capacity; INSPECTOR
DOE, Federal Protective
Services; PARAGON SYSTEMS,
INC.'S GUARD DOES 1-3; PARAGON
SYSTEM INC.'S SUPERVISOR DOE;
and PARAGON SYSTEMS, INC.,

    Defendants

CIVIL ACTION NO.
1:12-CV-1352-ODE

ORDER

This case is before the Court on two motions to dismiss
[Docs. 16 & 19], and on Plaintiff's motion to consolidate a
hearing on the preliminary injunction and a trial on the merits

[Doc. 26].  For the reasons discussed below, the Government's motion to dismiss [Doc. 16] is GRANTED IN PART and DENIED IN PART, Paragon System, Inc.'s motion to dismiss [Doc. 19] is GRANTED IN FULL, and Plaintiff's motion to consolidate [Doc. 26] is DENIED AS MOOT.

## I.    Background[1]

Plaintiff Jacqueline Stevens ("Dr. Stevens") is a Professor of Political Science at Northwestern University.  Her academic scholarship includes research and publications on the misconduct of immigration law enforcement officials, including immigration judges.    In addition to academic publications, Dr. Stevens has reported extensively for media outlets, including The New York Times, CNN, and NPR, on issues of secrecy in deportation proceedings and illegal conduct by immigration officials.

Defendant  William  A.  Cassidy  ("Judge  Cassidy")  is  an immigration judge with the Executive Office of Immigration Review ("EOIR" or "Immigration Court"), in Atlanta, Georgia.  Plaintiff alleges she was denied access to Judge Cassidy's courtroom and proceedings  on  multiple  occasions  during  2009  and  2010  in violation of her First, Fourth, and Fifth Amendment rights.

Plaintiff alleges two specific occasions on which she was unlawfully excluded from the immigration hearings.  On October 7, 2009,  Dr.  Stevens  and  Mark  Lyttle,  a  United  States  Citizen wrongfully  deported  by  Judge  Cassidy  in  2008,[2]  sat  in  Judge

---

[1]All facts are taken from Plaintiff's complaint.

[2]"On December 9, 2008, Immigration Judge Cassidy ("the IJ") ordered that Lyttle be removed to Mexico. At the hearing before the IJ, Lyttle did not have an opportunity to present evidence or

2

Cassidy's courtroom to observe three cases listed on his 1:00 p.m. docket.  Also present in the courtroom were the court reporter, the wife of a detainee at Stewart Detention Center, and the detainee's attorney ("Attorney A").  The detainee was agreeing to voluntary departure and appeared via televideo conference from the detention center.  After Judge Cassidy entered the courtroom, he inquired about each attendee's purpose.  After determining the identity of Dr. Stevens and Mr. Lyttle, Judge Cassidy immediately exited the courtroom, without explanation.

Several minutes later, Defendant Cynthia Long, the court administrator, entered and told Dr. Stevens and Mr. Lyttle they had to leave "because asylum hearings were scheduled."  Dr. Stevens, knowing that only 0.6% of Immigration Court cases each year are classified as "Credible Fear," "Reasonable Fear," or "Asylum," doubted all three cases qualified.  8 C.F.R. § 1208.6 (limiting disclosure of information or records in these cases without consent of the applicant or at the discretion of the Attorney General).  She questioned Defendant Long about the cases on the docket and Defendant Long gave "conflicting accounts" about why they had to leave.  A few minutes later, Defendant Long

---

challenge the evidence of Mexican citizenship brought against him. Despite Lyttle's mental disabilities, the IJ did not assess whether Lyttle was competent to proceed unrepresented in his removal proceedings or waive his right to counsel. The IJ did not determine whether safeguards were necessary to ensure Lyttle received a fair hearing. Construing these allegations in Lyttle's favor, it is reasonable to infer that the IJ simply rubber-stamped the false conclusion and unsupported record constructed by North Carolina ICE and the Georgia ICE Defendants that stated Lyttle was a citizen of Mexico." Lyttle v. United States, 867 F. Supp. 2d 1256, 1272 (M.D. Ga. 2012) (denying in part Government's motion to dismiss).

reappeared and told Dr. Stevens and Mr. Lyttle they could sit in on the next case. As they returned to the courtroom, they encountered Attorney A in the hallway who explained the wife was saying goodbye via video conference, so they all remained in the hallway to give her some privacy. After the wife and Attorney A left, Dr. Stevens and Mr. Lyttle sat down in the courtroom. A few minutes later, Defendant Long reentered the courtroom, and informed them there were no more hearings scheduled and they should leave. At no point on October 7 did Dr. Stevens again see Judge Cassidy.

Pursuant to a Freedom of Information Act ("FOIA") request, Dr. Stevens obtained a copy of an internal email indicating Defendant Long had informed various Immigration Court officials that "Jackie was allowed to observe a removal hearing today in Atlanta, but was not allowed to observe an asylum hearing – at the request of the respondents." The email further states Judge Cassidy said that "in Jackie's presence, he advised the respondents and their attorneys that a member of the media was present and asked if they wanted an open or closed hearing. Both respondents advised they wanted a closed hearing (sexual abuse case)."

In her FOIA request, Dr. Stevens also asked for a copy of the October 7, 2009 docket. In response, EOIR provided her with a docket listing only one case for that day and a note stating, "Please be advised the original Immigration Court calendar could not be located." When Dr. Stevens inquired about the missing cases, the EOIR public affairs office responded with an email explaining, "The third hearing for October 7, 2009, was

4

recalendared for another day at the request of the respondent's attorney prior to October 7.    It appeared on the October 7 calendar due to administrative oversight."

Dr. Stevens says she called the attorney ("Attorney B") for the case listed on the docket she obtained under FOIA, and confirmed he did have a telephonic hearing with Judge Cassidy that day and that it was not an asylum case.  Dr. Stevens alleges that this case, together with Attorney A's voluntary departure case, the recalendared case, and the two "sexual abuse" cases referenced by Judge Cassidy, add up to a total of five, rather than three, cases and show someone is covering up the number and nature of the cases heard on October 7.

On April 19, 2010, Dr. Stevens returned to the Atlanta Immigration Court to observe Judge Cassidy's immigration hearings. Dr. Stevens' complaint quotes an internal EOIR email sent the morning of April 19 titled, "Jackie Stevens is at the Atlanta Immigration Court" and informing several Immigration Court employees that "[s]he's currently observing Judge Cassidy's televideo hearings (he's doing Stewart docket via VTC today).  He called to let us know."    Dr. Stevens alleges that she was permitted to stay during the morning proceedings, for the detainees represented by counsel, but that afternoon she was made to leave during the hearing of a pro se detainee.  Specifically, Dr. Stevens alleges Judge Cassidy approached her after the courtroom had cleared of the other attorneys and told her to leave.  As the docket calendar reflected no asylum hearings before Judge Cassidy that day, Dr. Stevens asked to know on what basis she was being asked to leave.  Dr. Stevens informed Judge Cassidy

5

she was aware federal regulations required immigration hearings be "open to the public" unless certain exceptions apply.  8 C.F.R. § 1003.27.  Dr. Stevens maintains she asked for, but was never given, a reason or under what exception Judge Cassidy was closing the hearing.  She also alleges Judge Cassidy threatened to have security remove her if she did not leave.

Dr. Stevens states that before she left the courtroom she told Judge Cassidy's assistant she would be waiting in the lobby, and if by some chance the respondent had followed any of the exchange and requested her presence, she would return.  Plaintiff maintains the entire conversation with Judge Cassidy took place in normal tones and at normal volume, and at no point did she refuse to leave; rather, she was asking for the legal reasons on which she was being excluded.

Dr. Stevens provides another email excerpt, sent by an EOIR employee to Defendant Long, which she says confirms her understanding that security was asked to remove her from Judge Cassidy's courtroom, but was not told to remove her from the building:

Officer [REDACTED] was proceeding to the Immigration Court waiting room, and I informed him that I was not requesting for her to leave the building, but she is currently not allowed in courtroom #5.  The officer indicated he understood and still proceeded into the waiting room.  I heard the officer ask her to come back with him.

Despite this instruction, Dr. Stevens alleges three security officers, Defendants Paragon Systems, Inc.'s Guard Does 1-3

6

("Guards")[3], approached her in the waiting room and told her, "It's time to leave." Dr. Stevens alleges the three Guards "crowded" around her, "stood over her," and when she began asserting her right to observe immigration proceedings, Guard 1 removed his handcuffs from his belt. At this point Dr. Stevens says she got up and walked toward the exit, followed closely by the three Guards. At some point as they walked to the exit, Guard 1 told another Guard, "Judge Cassidy wants her out of here! He wants her out of the building!" When she asked Guard 1 what his name was, he responded with "Officer Out the Front Door." As Dr. Stevens tried to read his name tag, she alleges he pushed her left shoulder and side with his hands. She also alleges Guard 2 "had his hands on the right side of [her] torso."

Dr. Stevens says the transcript of a phone call, placed the afternoon of April 19 by Guard 1 to the MegaCenter Operator in Battle Creek, Michigan,[4] shows Judge Cassidy caused the injury and that the Guards lacked probable cause for ordering her to leave the court or lobby:

> Guard: We didn't get anything from her, 'cause we wasn't told everything that happened, that transpired in there until afterwards. We were only told to just escort her off the property. . . .
>
> Operator: Who asked you to escort her off? The judge?
>
> Guard: The judge, yes ma'am.

---

[3]According to Plaintiff, Paragon Systems, Inc. is a contractor that provides guard services to the Department of Homeland Security.

[4]The complaint does not further identify this facility or operator.

7

Operator: Good.

Guard: And one of the young ladies that works in the court hearings – what is her last name [REDACTED] or something.

Operator: In the court clerks?

Guard: Yes, ma'am. Court clerks.

In this same recorded conversation, Guard 1 explains, "they're trying to ban her from the building."

On April 27, 2010, per instructions on the EOIR website, Dr. Stevens filed a complaint with Defendant Marybeth Keller, Assistant Chief Immigration Judge at the EOIR headquarters in Virginia. In June, Dr. Stevens received a letter from Defendant Gary Smith, Assistant Chief Immigration Judge, responding to her concerns. The letter states "The second matter you raised pertained to Judge Cassidy ordering a security officer to have you removed from the building. My inquiry does not reveal that to be substantiated, and there is no indication that the judge ordered you removed from the building." The letter further states that in regard to her exclusion from the courtroom, "[Judge Cassidy] needed to inquire of a pro se respondent whether the respondent wished to have the hearing closed to the public. . . . After talking with the respondent, the judge deemed it appropriate under 8 Code of Federal Regulations, Section 1003.27, to exclude the public from that hearing."

On these facts, Dr. Stevens filed her pro se complaint alleging violations of the First, Fourth, and Fifth Amendments of the United States Constitution.

8

## II.  Claims and Defendants

The Court will refer to the following Defendants collectively as the "Federal Defendants": Eric Holder, Attorney General of the United States; Juan Osuna, Director, Executive Office of Immigration Review; Frank Mooney, Assistant Director for the Office of Management Programs, Executive Office of Immigration Review; Marybeth Keller, Assistant Chief Immigration Judge, Executive Office of Immigration Review; Gary Smith, Assistant Chief Immigration Judge, Executive Office of Immigration Review; William Anthony Cassidy, Immigration Judge, Executive Office of Immigration Review; Cynthia Long, Court Administrator; Darren Eugene Summers, Regional District Supervisor, Federal Protective Services; and Inspector Doe, Federal Protective Services.

Similarly, the Court will refer to Defendants Paragon Systems Inc.'s Guard Does 1-3, Paragon System Inc.'s Supervisor Doe, and Paragon Systems, Inc. collectively as the "Private Defendants".

Dr. Stevens alleges two counts in her pro se complaint: (I) Constitutional Violations, and (II) Preliminary and Permanent Injunction.  All counts appear to based on violations of Plaintiff's First, Fourth, and Fifth Amendment rights.

Count I is "solely pled against Defendant [Judge] Cassidy in his individual capacity and Paragon [Guards] 1-3 in their individual capacity." Count I requests damages, attorneys' fees, and a declaratory judgment.

Count II is pled "against all Defendants," and seeks injunctive relief "granting Plaintiff, the public, and the press open access to the immigration hearings in Judge Cassidy's court in compliance with the law."

There appears to be some confusion in the briefs about whether or not Plaintiff has also pled state law claims of assault, battery, and false imprisonment. Although Plaintiff's complaint refers several times to these torts, they appear to be underlying her constitutional claims; e.g., the "actions of false imprisonment, assault and battery, amounted to a 'seizure' in violation of her Fourth Amendment constitutional rights." [Doc. 1, ¶ 136]. In addition, Plaintiff does not claim a state tort cause of action as the basis of her requests for relief. While the Court does construe pro se complaints liberally, the Court will not rewrite the complaint. Therefore, the Court will not construe the complaint, which is clear about its claims of "Constitutional Violations" and "Preliminary and Permanent Injunction," to include these state law causes of actions.[5]

## III. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." In ruling on the pending motion to dismiss, all of the factual allegations in Plaintiff's complaint must be accepted as true and construed in the light most favorable to Plaintiff.

---

[5]The Court notes that Plaintiff has been represented by counsel since August 17, 2012. Although Plaintiff's counsel says in both response briefs he "anticipates" filing an amended complaint, it is now January and the Court has seen no such filing. Plaintiff's counsel also "concedes that the actions of the [Private] Defendants are not adequately stated to support a Bivens claim and that her claims are more appropriately construed as tort law claims." [Doc. 41 at 3]. This is not the proper way to amend the complaint, and the Court will not "construe" these state causes of action into existence. If Plaintiff wants to allege state tort claims, counsel should seek leave to amend the complaint.

10

Young Apartments, Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1037 (11th Cir. 2008).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). The standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). It is not necessary for a complaint to set out all the facts in detail, but a plaintiff has to at least allege "enough factual matter (taken as true) to suggest" the existence of the required elements of the claim. Id.; see also Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007). In viewing the complaint, the Court must accept as true all of the factual allegations in the complaint, but the Court is not required to accept legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

## IV.  Federal Defendants' Motion to Dismiss

The Government has filed a motion to dismiss all claims against the Federal Defendants. The Government raises several issues that it contends make the Plaintiff's complaint deficient as a matter of law. The Court will address these in turn.

### A.  The Underlying Constitutional Violations

#### 1.  First Amendment Violation

The Government contends Plaintiff fails to state a claim upon which relief can be granted. Plaintiff alleges she was unlawfully

11

excluded from Judge Cassidy's courtroom. She alleges the hearings she was excluded from were not asylum hearings, involving claims such as sexual abuse, as asserted by Defendant Long. Plaintiff alleges she spoke with attorneys in at least two of those cases who confirmed their clients were not seeking asylum and that the supposed asylum cases she was excluded from on another day were not listed on the docket as asylum cases. Therefore, Plaintiff's claim is that she suspects the reasons allegedly given for excluding her were false. She has, however, stated a factual basis for her suspicion.

Defendants' motion and brief fail to illuminate this matter, contending only that "Defendant Cassidy did not describe his reasons for closure to Plaintiff." Instead, the Government seems to assert generally that the regulations "permit Defendant Cassidy to close immigration proceedings as he did," and even if they did not, the Government asserts that the Constitution simply does not mandate the public's right to attend immigration hearings. The Court declines the opportunity to define broad based principles given the current factual uncertainty, but will examine the breadth of Constitutional protection once the facts are more certain.

The Court cannot determine, on these facts, that it was lawful for Judge Cassidy to exclude Dr. Stevens. Perhaps the cases were asylum cases, involving testimony of a personal, sensitive nature, but perhaps they were not. Only discovery and evidence from sources such as the Immigration Court's case files can confirm this one way or the other. But the standard on a motion to dismiss is whether the Plaintiff has alleged "enough

12

fact to raise a reasonable expectation that discovery will reveal evidence" of the claim.    Twombly, 550 U.S. at 556.    Construing the pro se complaint liberally, Plaintiff has alleged that at least two cases did not qualify for closure under an exception for asylum cases as allegedly claimed by Defendants.  At least to this extent, Defendants have failed to show that Plaintiff's complaint fails to state a claim for which relief can be granted. Therefore, Defendants' motion to dismiss Plaintiff's First Amendment claim is DENIED.

> **2.  Plaintiff fails to state a claim for violation of the Fourth Amendment against the Federal Defendants**

Plaintiff alleges she was "subjected to assault, battery, and false imprisonment" by federal agents in violation of her Fourth Amendment rights.    Plaintiff provides no facts indicating a Federal Defendant ever laid a hand on her, or directed anyone else to do so.  Furthermore, to the extent Dr. Stevens' claim is based on excessive force, the display of handcuffs and brief touching on the shoulder do not violate the Fourth Amendment, as a matter of law.  To the extent her claim rests on Judge Cassidy's order that she be removed from the building, this is also insufficient to support a claim under the Fourth Amendment.

The Fourth Amendment protects an individual from "unreasonable searches and seizures."  U.S. Const. amend. IV.  "A seizure occurs whenever the police 'restrain[ ] the freedom of a person to walk away.'"  Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, 637 F.3d 1178, 1191 (11th Cir. 2011) [hereinafter American Federation of Labor] (quoting Brower v. Cnty. of Inyo, 489 U.S. 593, 595 (1989)).

13

In <u>American Federation of Labor</u>, one of the plaintiffs alleged she was "seized" by police officers when a line of officers monitoring an ongoing demonstration, forced her to change her route down a side street. <u>American Federation of Labor</u>, 637 F.3d at 1191. The United States Court of Appeals for the Eleventh Circuit said, "[a]lthough [plaintiff's] freedom of movement was certainly restrained, she still had the ability to, and indeed did, walk away." <u>Id.</u> The Eleventh Circuit went on to hold that "the defendants' involvement in forcing [plaintiff] down the side street, [was not] a Fourth Amendment injury." <u>Id.</u>

Like the plaintiff in <u>American Federation of Labor</u>, Dr. Stevens was always free to walk away; that, in fact, was the point. However wronged she may feel, and whatever other claims she might have, the actions alleged do not violate the Fourth Amendment. Therefore, Plaintiff's Fourth Amendment claims against the Federal Defendants are DISMISSED.

### 3. **Plaintiff states a claim for violation of the Fifth Amendment**

Plaintiff's complaint alleges her exclusion from Judge Cassidy's courtroom violates the Fifth Amendment. The Fifth Amendment encompasses several distinct rights, but the pro se complaint does not identify any one in particular. It appears to the Court, construing her pro se complaint liberally, that Plaintiff alleges an equal protection violation.[6] Her complaint

---

[6]The Government's brief argues she does not state a Fifth Amendment due process claim. The Court agrees with the Government's conclusion that a third party does not have a due process right in the trial of another. However, as noted, the Fifth Amendment contains more than just due process rights, and the Court construes her pro se Fifth Amendment challenge as

lays out facts indicating that Judge Cassidy is excluding her, specifically, from certain immigration hearings, in violation of federal regulations.  As alleged by Dr. Stevens, her exclusion is based on her research and publications highlighting corruption in the immigration courts, including criticisms of Judge Cassidy in particular.  Practically speaking, Dr. Stevens "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The facts, as alleged by Dr. Stevens and at this early stage of litigation, are sufficient to state a "class of one" equal protection violation under the Fifth Amendment, and the Federal Defendants' motion to dismiss her Fifth Amendment claims is DENIED.

### B.  Plaintiff's claim for damages against Judge Cassidy fails because he is entitled to judicial immunity

"Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'"  Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000) (citations omitted).  "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction."  Id.  The Supreme Court has extended this absolute immunity from damages to administrative law judges.  Butz v. Economou, 438 U.S. 478, 512-13 (1978) ("We think that adjudication within a federal administrative agency shares enough

_____

alleging an equal protection violation.

15

of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages.").

Plaintiff attempts to distinguish <u>Butz</u> by arguing that the instant case involves a third party, while the plaintiff in <u>Butz</u> was a party to the administrative proceedings. That distinction does not make a difference in a suit against a judge in the judicial branch, so neither does it make a difference in a suit against a judge in the executive branch.

Plaintiff also argues that Judge Cassidy's decisions about opening or closing his courtroom proceedings are not "judicial functions." Yet, Plaintiff concedes federal regulations authorize, and in fact instruct in certain situations, an immigration judge to close proceedings. Therefore, since the decision to close courtroom proceedings is a "function normally performed by a judge," it cannot be said that Judge Cassidy acted in clear absence of all jurisdiction. <u>Stump v. Sparkman</u>, 435 U.S. 349, 362 (1978); <u>see also</u> <u>Mireles v. Waco</u>, 502 U.S. 9, 13 (1991) (finding judicial immunity even where the judge authorized and ratified police officers' excessive use of force). Judge Cassidy is entitled to absolute immunity and the claim for damages against him is DISMISSED.

## C. Plaintiff's requested injunctive relief

### 1. Plaintiff has standing to seek injunctive relief

In order to have standing to bring a lawsuit in federal court, a plaintiff must meet three requirements.

> First, the plaintiff must have suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical.  Second,
there must be a causal connection between the injury and
the conduct complained of--the injury has to be fairly
traceable to the challenged action of the defendant, and
not the result of the independent action of some third
party not before the court.  Third, it must be likely,
as opposed to merely speculative, that the injury will
be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)

(internal quotations, footnote and citations omitted).

The Government contends Plaintiff does not have standing to
seek an injunction because she cannot show threat of future
injury.  The Court disagrees.  Plaintiff seeks an injunction to
stop being excluded from Judge Cassidy's courtroom.  Plaintiff
alleges she has in the past, and wishes to in the future, attend
immigration hearings in Judge Cassidy's courtroom. A fair reading
of the complaint indicates Judge Cassidy excludes Dr. Stevens from
deportation hearings he does not want included in her research on
misconduct in the immigration courts.  Judge Cassidy, according to
the complaint, has gone so far as to have her removed from the
entire building.  Dr. Stevens has alleged sufficient facts to show
it is likely, when she again attempts to attend Judge Cassidy's
hearings, she will be wronged again.

The Government relies on City of Los Angeles v. Lyons to
support its contention that Dr. Stevens' allegation of future
injury is "conjectural" or "hypothetical."  461 U.S. 95, 102
(2003).  The instant case is easily distinguishable from Lyons.
In Lyons, the plaintiff sought to enjoin the entire Los Angeles
police department from using a choke hold on him, should he ever
be stopped again at some unknown time in the future.  The Supreme
Court found his allegation that he might someday be stopped and

17

"[might] again be subject to an illegal choke hold," insufficient
to create an actual controversy.  The Lyons Court concluded it was
"no more than speculation to assert . . . that Lyons himself will
again be involved in one of those unfortunate instances." Id. at
108.

In contrast, Dr. Stevens has alleged multiple occasions,
including two specific occasions, on which she has actively
sought, and was unlawfully denied, access to Judge Cassidy's
courtroom for deportation hearings.  The plaintiff in Lyons sought
to enjoin the possibility that police would again stop him and use
the illegal choke hold, but in this case, Dr. Stevens herself
controls the occurrence of a future encounter with Judge Cassidy.
The Plaintiff in Lyons also sought an injunction based on
allegations that some, yet unidentified, officer would subject him
to the same unlawful choke hold.  In contrast, Dr. Stevens' claim
does not seek to enjoin some unidentified immigration judge from
acting in an unlawful manner, but rather Judge Cassidy
specifically, based on multiple past interactions of the same
nature.

Therefore, her claim is quite distinct from the plaintiff in
Lyons who relied solely on the "speculation" that some unknown and
unidentified police officer might actively and unlawfully
encounter him, at some point in the future.  Dr. Stevens here is
not "speculat[ing]" about a future encounter.  Dr. Stevens,
rather, seeks assurances from this Court that when she next
attends a hearing in Judge Cassidy's courtroom, she will not be
unlawfully excluded.  Dr. Stevens has shown there is a "sufficient
likelihood that [she] will again be wronged in a similar way," and

18

this is sufficient to satisfy the injury requirement for standing.
Id. at 111.

### 2. **Plaintiff states a claim for permanent injunctive relief**

The Government contends the claim for an injunction "granting
Plaintiff, the public and the press open access to the immigration
hearings in Judge Cassidy's court in compliance with the law,"
fails to state a claim because this Court cannot grant the
requested relief.    The Government argues the request for
injunctive relief should be denied because it does not comply with
Fed. R. Civ. P. 65(d).  Although the Government suggests it is the
prayer for relief in the complaint that must comply with Rule
65(d), the Rule actually outlines the "contents and scope" of the
Court's "order" granting the injunction.   FED. R. CIV. P. 65(d).
The claim is for constitutional violations; the injunction is a
requested remedy.   Should this case get that far, the Court is
confident it will be able to craft an injunction that complies
with Rule 65.

The Government's motion to dismiss Plaintiff's claim for
permanent injunctive relief is DENIED.

### 3. **Plaintiff fails to state a claim for preliminary injunctive relief**

To obtain preliminary injunctive relief, a plaintiff must
establish four elements:  (1) that there is a substantial
likelihood she will succeed on the merits; (2) that she will
suffer irreparable harm absent the injunction; (3) that the harm
from denying the injunction outweighs the harm to defendants of
granting it; and (4) that the injunction would not be against the

19

public interest. Ingram v. Ault, 50 F.3d 898, 900 (11th Cir. 1995).

Plaintiff is not entitled to a preliminary injunction. Most importantly, Plaintiff has not shown she will suffer irreparable harm without the injunction. The Court notes that the last specific instance Plaintiff alleges she was unconstitutionally excluded from Judge Cassidy's courtroom occurred in 2010. Plaintiff did not file the instant lawsuit until 2012. Although the Court believes her interest in attending proceedings in Judge Cassidy's courtroom is sufficient for standing purposes, she alleges no facts indicating an urgent need to attend hearings and therefore cannot show irreparable injury.

The Government's motion to dismiss the claim for a preliminary injunction is GRANTED.

## V. Defendant Paragon Systems, Inc.'s Motion to Dismiss

This motion has been filed on behalf of Paragon Systems, Inc. ("Paragon, Inc.") and only seeks to dismiss claims against the corporation; the motion does not include the claims against the individual Guards and Supervisor Doe.

Because Count I--damages and declaratory judgment for constitutional violations--is only pled against the individual security guards, there is no claim under Count I for the Court to dismiss against Paragon, Inc.

Count II--injunctive relief--has been pled against all Defendants, therefore the Court will consider Paragon, Inc.'s motion to dismiss on this count. Paragon, Inc. submits, and the Court agrees, that Plaintiff does not have a claim for injunctive relief against it. Plaintiff's claim for injunctive relief seeks

"open access to the immigration hearings in Judge Cassidy's court." However, she alleges no facts that indicate the Paragon Defendants had anything to do with Judge Cassidy's order to close the courtroom. Defendant Paragon, Inc. is under contract to provide security services for EOIR. Plaintiff alleges no facts, nor can the Court conceive of any facts, indicating Defendant Paragon, Inc. has a right to control the Judge's actions or the openness of his courtroom. Therefore, Plaintiff fails to state a claim for injunctive relief against Defendant Paragon, Inc. Accordingly, all claims against Defendant Paragon Systems, Inc. are DISMISSED.

## VI.  Plaintiff's Motion to Consolidate

Since the Court has dismissed Plaintiff's claim for a preliminary injunction, there is now no hearing with which to consolidate a trial on the merits. Therefore, Plaintiff's motion to consolidate under Rule 65(a)(2) is DENIED AS MOOT.

## VII. Conclusion

For the reasons discussed above, the Government's motion to dismiss [Doc. 16] is GRANTED IN PART and DENIED IN PART, Paragon System, Inc.'s motion to dismiss [Doc. 19] is GRANTED IN FULL, and Plaintiff's motion to consolidate [Doc. 26] is DENIED AS MOOT.

SO ORDERED, this __16__ day of January, 2013.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

21